KEKER, VAN NEST & PETERS LLP
MATAN SHACHAM – Cal Bar # 262348
mshacham@keker.com
(admitted pro hac vice)
ERICA S. MIRANDA – Cal Bar # 325188
emiranda@keker.com
(admitted pro hac vice)
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

KIERNAN, TREBACH LLP
JOSEPH ARONSON (BBO#022070)
jaronson@kiernantrebach.com
40 Court Street, 3rd Floor
Boston, MA 02108
Telephone: 617 426 3900
Facsimile: 617 426 0380

Attorneys for Defendant FACEBOOK, INC.

## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RIAN WATERS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FACEBOOK INC., GOOGLE LLC., OFFICER JEREMY HALEY, AIDAN KEARNEY, KATHERINE PETER, SPRINGFIELD POLICE, DR. MARTHA SMITH-BLACKMORE, WILLIAM HIGGINS, MAURA HEALEY, JOHN DOES 1-10,<br><br>　　　　　Defendant. | Case No. 3:20-CV-30168 MGM<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Judge:　　Hon. Mark G. Mastroianni<br><br>Date Filed:　October 26, 2020<br><br>Trial Date:　None Set |

**TABLE OF CONTENTS**

**Page No.**

I.  INTRODUCTION ......................................................................................................1

II. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY.....................................1

    A.  Plaintiff's Allegations Against Kearney ............................................................1

    B.  Plaintiff's Allegations Against Facebook ...........................................................3

    C.  Procedural History ...........................................................................................4

III. ARGUMENT ...........................................................................................................4

    A.  Plaintiff fails to state a claim against Facebook.................................................4

        1.  Plaintiff fails to state a claim against Facebook under federal law..............5

        2.  The Court lacks subject-matter jurisdiction over Plaintiff's state-law claims—for which he also fails to state claim against Facebook. .............10

    B.  Plaintiff's claims are barred by Section 230(c)(1) of the Communications Decency Act.....................................................................................................15

    C.  Granting leave to amend would be futile...........................................................20

IV. CONCLUSION.........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abdel-Aleem v. OPK Biotech LLC,*
    665 F.3d 38 (1st Cir. 2012) ................................................................................10, 11

*Alexis v. McDonald's Restaurants of Massachusetts, Inc.,*
    67 F.3d 341 (1st Cir. 1995) .......................................................................................6

*Am. Honda Fin. Corp. v. City of Revere,*
    No. 1:19-CV-10266-ADB, 2020 WL 3840905 (D. Mass. July 8, 2020) ....................6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................4

*Atkinson v. Facebook, Inc.,*
    3:20-CV-05546-RS, slip op. (N.D. Cal. Dec. 7, 2020) .........................................5, 6

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1990) ...................................................................................4

*Barnes v. Yahoo!, Inc.,*
    570 F.3d 1096 (9th Cir. 2009) ..........................................................................19, 20

*Caraccioli v. Facebook, Inc.,*
    167 F. Supp. 3d 1056 (N.D. Cal. 2016) ..................................................................17

*Carafano v. Metrosplash.com, Inc.,*
    339 F.3d 1119 (9th Cir. 2003) ...............................................................................16

*Castillo v. SEIU 32BJ New Eng.,*
    No. 20-11220-ADB, 2020 WL 5237698 (D. Mass. Sept. 2, 2020) .........................13

*Cohen v. Facebook, Inc.,*
    252 F. Supp. 3d 140 (E.D.N.Y. 2017) ...................................................................17

*Cook v. Gates,*
    528 F.3d 42 (1st Cir. 2008) .......................................................................................4

*Crimson Galeria Limited Partnership v. Healthy Pharms, Inc.,*
    337 F. Supp. 3d 20 (D. Mass. 2018) ......................................................................10

*Cross v. Facebook,* 14
    Cal. App. 5th 190 (2017) .......................................................................................17

*DeLima v. YouTube, LLC*,
No. 17-CV-733-PB, 2018 WL 4473551 (D.N.H. Aug. 30, 2018), *report and recommendation adopted sub nom. DeLima v. YouTube Inc*, No. 17-CV-733-PB, 2018 WL 4471721 (D.N.H. Sept. 18, 2018) ...................................................................5

*Dep't of Rec. & Sports of Puerto Rico v. World Boxing Assn*,
942 F.2d 84 (1st Cir. 1991) ...........................................................................................11

*Doe II v. MySpace, Inc.*,
175 Cal. App. 4th 561 (2009) .......................................................................................17

*Doe v. Amherst College*,
238 F. Supp. 3d 195 (D. Mass. 2017) ...........................................................................11

*Dyroff v. Ultimate Software Grp.*,
934 F.3d 1093 (9th Cir. 2019) .......................................................................................18

*Enigma Software Group USA, LLC v. Malwarebytes, Inc.*,
946 F.3d 1040 (9th Cir. 2019) .......................................................................................20

*Fed. Agency of News LLC v. Facebook, Inc.*,
395 F. Supp. 3d 1295 (N.D. Cal. 2019) ..............................................................5, 6, 17

*Fed. Agency of News LLC v. Facebook, Inc.*,
432 F. Supp. 3d 1107 (N.D. Cal. 2020) .......................................................................18

*Fehrenbach v. Zeldin*,
No. 17-CV-5282 (JFB) (ARL), 2018 WL 4242452 (E.D.N.Y. Aug. 6, 2018).....................5, 6

*Flores-Silva v. McClintock-Hernandez*,
710 F.3d 1 (1st Cir. 2013) ............................................................................................20

*Forbes v. Facebook, Inc.*,
No. 16 CV 404 (AMD), 2016 WL 676396 (E.D.N.Y. Feb. 18, 2016) ....................................5

*Force v. Facebook*,
934 F.3d 53 (2nd Cir. 2019).....................................................................................18, 20

*Geshke v. Crocs, Inc.*,
889 F. Supp. 2d 253 (D. Mass. 2012) ...........................................................................14

*Ictech-Bendeck v. Progressive Waste Sols. of LA, Inc.*,
367 F. Supp. 3d 555 (E.D. La. 2019) ...........................................................................12

*Jane Doe No. 1 v. Backpage.com, LLC*,
817 F.3d 12 (1st Cir. 2016)...............................................................................16, 19, 20

*Jurin v. Google, Inc.*,
695 F. Supp. 2d 1117 (E.D. Cal. 2010)....................................................................17, 18

iii

*King v. Facebook, Inc.*,
 No. 19-CV-01987-WHO, 2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) ..............................18

*King v. Friends of Kelly Ayotte*,
 860 F. Supp. 2d 118 (D.N.H. 2012)..................................................................................6

*Klayman v. Zuckerberg*,
 753 F.3d 1354 (D.C. Cir. 2014) ...............................................................................17, 18

*Lancaster v. Alphabet Inc.*,
 No. 15-cv-05299-HSG, 2016 WL 3648608 (N.D. Cal. July 8, 2016) ....................................17

*Lugar v. Edmondson Oil Co., Inc.*,
 457 U.S. 922 (1982).........................................................................................................6

*Lumbermens Mut. Cas. Co. v. Grinnell Corp.*,
 477 F. Supp. 2d 327 (D. Mass. 2007) ...............................................................................11

*Malwarebytes, Inc. v. Enigma Software Group USA, LLC*,
 No. 19-1284, 2020 WL 6037214 (U.S. Oct. 13, 2020)........................................................20

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
 925 F.3d 1263 (D.C. Cir. 2019) .......................................................................................18

*Maymi v. Puerto Rico Ports Auth.*,
 515 F.3d 20 (1st Cir. 2008)...............................................................................................7

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
 591 F.3d 250 (4th Cir. 2009) ...........................................................................................16

*Nyabwa v. Facebook*,
 No. 2:17-CV-24, 2018 WL 585467 (S.D. Tex. Jan. 26, 2018)...............................................5

*O'Neill v. U.S.*,
 328 F. Supp. 3d 16 (D. Mass. 2018) .................................................................................12

*O'Rourke v. Hampshire Council of Governments*,
 121 F. Supp. 3d 264 (D. Mass. 2015) .................................................................................7

*Obado v. Magedson*,
 No. 13-2382 (JAP), 2014 WL 3778261 (D.N.J. July 31, 2014) ...........................................17

*Ocasio-Hernández v. Fortuño-Burset*,
 640 F.3d 1 (1st Cir. 2011) ...............................................................................................13

*Osorio v. One World Techs., Inc.*,
 659 F.3d 81 (1st Cir. 2011)..............................................................................................14

*Pennie v. Twitter, Inc.*,
 281 F. Supp. 3d 874 (N.D. Cal. 2017) ..............................................................................18

iv

*Perkins v. F.I.E. Corp.*,
    762 F.2d 1250 (5th Cir. 1985) ...................................................................................12

*Reyes v. Zion First Nat'l Bank*,
    No. 10-cv-345, 2012 WL 947139 (E.D. Pa. Mar. 21, 2012) ....................................10

*Riggs v. MySpace, Inc.*,
    444 F. App'x 986 (9th Cir. 2011) .............................................................................17

*Santiago v. Puerto Rico*,
    655 F.3d 61 (1st Cir. 2011).....................................................................................5, 6

*Shulman v. Facebook.com*,
    No. 17-764 (JMV), 2017 WL 5129885 (D.N.J. Nov. 6, 2017)....................................5

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ...................................................................17

*Taupier v. Davol, Inc.*,
    3:19-CV-10184-KAR, 2020 WL 5665565 (D. Mass. Sept. 23, 2020) ......................14

*U.S. v. Boylan*,
    898 F.2d 230 (1st Cir. 1990)......................................................................................9

*U.S. v. Cianci*,
    378 F.3d 71 (1st Cir. 2004)........................................................................................7

*U.S. v. Leoner-Aguirre*,
    939 F.3d 310 (1st Cir. 2019)......................................................................................8

*U.S. v. Rodriguez-Torres*,
    939 F.3d 16 (1st Cir. 2019)........................................................................................8

*Universal Commun. Sys., Inc. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007)...............................................................................16, 19

*Weinberg v. Grand Circle Travel, LCC*,
    891 F. Supp. 2d 228 (D. Mass. 2012) .......................................................................11

*Yeo v. Town of Lexington*,
    131 F. 3d 241 (1st Cir. 1997).....................................................................................5

*Young v. Facebook, Inc.*,
    No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) .........5, 6

**State Cases**

*Altman v. Aronson*,
    231 Mass. 588 (1919) ........................................................................................11, 13

*Bell v. Mazza,*
   394 Mass. 176 (1985) ...............................................................................................15

*Foley v. Polaroid Corp.,*
   400 Mass 82 (1987) ..................................................................................................16

*Haglund v. Philip Morris, Inc.,*
   446 Mass. 741 (2006) ...............................................................................................14

*Jupin v. Kask,*
   447 Mass. 141 (2006) ...............................................................................................11

*Leavitt v. Brockton Hosp., Inc.,*
   454 Mass. 37 (2009) .................................................................................................12

*Polay v. McMahon,*
   468 Mass. 379 (2014) ...............................................................................................15

**Federal Statutes**

18 U.S.C. § 1962(c) ...................................................................................................8, 10

18 U.S.C. § 1962(d) ....................................................................................................3, 7

28 U.S.C. § 1332 ..........................................................................................................10

28 U.S.C. § 1367 ..........................................................................................................10

42 U.S.C. § 1983 ...........................................................................................3, 5, 6, 20

42 U.S.C. § 1986 ...........................................................................................3, 6, 7, 20

Communications Decency Act ................................................................................ *passim*

Racketeer Influenced and Corrupt Organization Act.......................................7, 8, 10, 20

**State Statutes**

Mass. Gen. Laws Ch. 12, § 11H ................................................................................15

Mass. Gen. Laws Ch. 12, § 11I..........................................................................14, 15, 20

**Other Authorities**

First Amendment .........................................................................................................5

Eighth Amendment ......................................................................................................5

Federal Rule of Civil Procedure 8 ..............................................................................13

Federal Rule of Civil Procedure 12 ...............................................................................1, 4

Massachusetts Constitution Article XII ..............................................................3, 10, 15

MEMORANDUM IN SUPPORT OF DEFENDANT FACEBOOK INC.'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 3:20-CV-30168 MGM

Pursuant to Federal Rule of Civil Procedure 12, Facebook respectfully moves to dismiss the claims against it.

## I.      INTRODUCTION

On January 11, 2021, *pro se* plaintiff Rian Waters filed his First Amended Complaint ("FAC").[1]  As in his original Complaint, Plaintiff alleges that Defendants Aidan Kearney, Katherine Peter, and others associated with Kearney's Turtleboy Sports online persona engaged in various acts of wrongdoing against him, including posting hurtful and harassing statements about him on several online forums.  And again, Plaintiff attempts to morph this dispute with Kearney into a far-reaching conspiracy involving police officers, his public defender, and even the Massachusetts Attorney General.  The details of Plaintiff and Kearney's personal dispute remain unclear, as Plaintiff does not clarify them in his FAC.  Plaintiff may or may not have claims against Kearney and the other individual defendants, but he continues to improperly attempt to drag Facebook into this dispute.  He includes only a handful of vague allegations against Facebook to support his prayer for compensatory damages, punitive damages, and unspecified injunctive relief.

Plaintiff's FAC fails for three reasons: (1) each of his claims is facially deficient; (2) the Court lacks jurisdiction over the state-law claims; and (3) the claims against Facebook are barred by Section 230(c)(1) of the Communications Decency Act (CDA).  Indeed, claims such as these, which seek to hold an online platform operator such as Facebook liable for allegedly offensive content posted by another user, are precisely the sort of claims that Section 230(c)(1) of the CDA was intended to bar, and courts around the country have repeatedly and consistently rejected such claims as a result.  For these reasons, and as detailed below, the Court should grant Facebook's Motion to Dismiss and dismiss Plaintiff's claims against Facebook with prejudice.

## II.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

### A.      Plaintiff's Allegations Against Kearney

Plaintiff's FAC alleges an ongoing personal dispute with Aidan Kearney dating back to

---

[1]      Dkt. 41.

MEMORANDUM IN SUPPORT OF DEFENDANT FACEBOOK INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:20-CV-30168 MGM

January 2017, when Kearney posted about Plaintiff's arrest for alleged animal cruelty and battery.[2]  Plaintiff asserts he was arrested because Samantha Cardin falsely accused him of these crimes to Defendant Officer Jeremy Haley—who then lied about Plaintiff admitting to those crimes and stole $300 from his pocket.[3]  As a result of Kearney's postings, Plaintiff began receiving threats.[4]  Plaintiff's public defender, Defendant William Higgins, allegedly failed to provide exculpatory evidence to him and his new counsel.[5]  Eventually the charges were dropped, and Plaintiff sued Kearney for libel, slander, and intentional infliction of emotional distress.[6]

According to the FAC, Kearney's alleged cyber-bullying campaign spanned multiple platforms: Kearney's blog, Facebook, and YouTube.[7]  Kearney and his followers harassed him using multiple accounts with fake names, posting pornographic images with Plaintiff's face superimposed, and "lik[ing]" the posts of other users who threatened him.[8]  Plaintiff asserts that the police joined in this effort by refusing to help him after he was threatened and by coordinating with Kearney to provide information for Plaintiff's continued harassment.[9]

Plaintiff contends that Kearney's online conduct, and the online conduct of his followers, constitutes witness intimidation.[10]  Kearney posted articles about Plaintiff shortly before hearings in Plaintiff's case against him in Massachusetts Superior Court, said that he would "murder" Plaintiff "with [his] words" and ruin his life for suing him, harassed an individual who filed an affidavit in the case, and disclosed to followers Plaintiff's phone number and address.[11]  Although omitted from his FAC, Plaintiff's TRO Brief asserts that even the judges who adjudicated his past

---

[2]     FAC ¶¶ 50, 54.

[3]     *Id.* ¶¶ 50, 52-53.

[4]     *Id.* ¶ 55.

[5]     *Id.* ¶¶ 11, 59-60, 171.

[6]     *Id.* ¶¶ 61-63.

[7]     *Id.* ¶¶ 17-18, 22-23, 31.

[8]     *Id.* ¶¶ 17, 18, 31, 35, 41-42.

[9]     *Id.* ¶¶ 64-68, 164.

[10]    *Id.* ¶¶ 31-49.

[11]    *Id.* ¶¶ 36-37, 39-42, 46, 48.

suit against Kearney intentionally tolerated Kearney's misconduct.[12]  He concluded that it

became too dangerous to present evidence in his case, resulting in his summary judgment loss.[13]

### B.    Plaintiff's Allegations Against Facebook

The FAC's allegations relating to Facebook are sparse.  Indeed, the FAC does little more

than allege that third parties posted offensive content on various Facebook pages, among other

platforms.  Plaintiff does not allege there is any connection between Facebook and Kearney other

than that Kearney is a Facebook user.  Nor does he allege that anyone at Facebook communicated

with Kearney or was in any way involved in Kearney's campaign against him.  In fact, Plaintiff

admits that Facebook has previously suspended at least three accounts associated with Kearney's

blog "Turtleboy Sports" if not more.[14]

Instead, Plaintiff alleges that Facebook did not properly enforce its Terms of Service

against Kearney and his ever-growing number of accounts, many of which are allegedly set up

under fake names.[15]  He further alleges that Facebook, to keep users engaged with its platform,

uses an algorithm that collects data about its users to match them with content they might find

interesting.[16]  He claims that this algorithm caused offensive content created by Kearney and

others to appear in the news feeds and notifications of Plaintiff's friends and family.[17]  Plaintiff

does not allege which friends or family members were affected, what posts they saw, when they

saw those posts, how they reacted, or how this affected Plaintiff.

Based on these threadbare allegations, Plaintiff asserts seven claims against Facebook:

product design flaw (Count I); gross negligence (Count II); neglect to prevent violation of his

rights under 42 U.S.C. § 1986 (Count IV); conspiracy to engage in racketeering activity under 18

U.S.C. § 1962(d) (Count VI); violation of civil rights under Article XII of the Massachusetts

Declaration of Rights (Count IX); cruel and unusual punishment under 42 U.S.C. § 1983 (Count

---

[12]    TRO Br. at 15.

[13]    FAC ¶ 76.

[14]    *Id.* ¶ 20.

[15]    *Id.* ¶¶ 15-21.

[16]    *Id.* ¶ 25.

[17]    *Id.* ¶¶ 75, 162.

X); and intentional infliction of emotional distress (Count XI).

### C.   Procedural History

On October 26, 2020 Plaintiff filed his verified Complaint against Facebook, Google LLC, Officer Jeremy Haley, Aidan Kearney, Katherine Peter, Springfield Police, Dr. Martha Smith-Blackmore, William Higgins, Massachusetts Attorney General Maura Healey, and Does 1-10.  Since filing his Complaint, Plaintiff has twice moved for a temporary restraining order against Facebook.[18]  The Court rejected his first attempt and has not yet ruled on the second.[19]

In light of Plaintiff's representations that he planned to amend his Complaint, the Court approved a stipulation extending Facebook's time to answer or move to dismiss the Complaint until January 8, 2021.[20]  On January 8, 2021, Facebook moved to dismiss Plaintiff's Complaint, as he had yet to file his amended pleadings.[21]  Plaintiff filed his FAC on January 11, 2021.

## III.   ARGUMENT

### A.   Plaintiff fails to state a claim against Facebook.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[22]  Dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[23]  In evaluating a complaint's sufficiency, the Court disregards allegations that are "no more than conclusions" or "[t]hreadbare recitals of the elements[.]"[24]  Here, even accepting as true the allegations in the FAC,[25] Plaintiff fails to allege facts sufficient to support any of his seven causes of action against Facebook.

---

[18]    Dkt. 4; Dkt. 17.

[19]    Dkt. 11; TRO Opposition.

[20]    Dkt. 35.

[21]    Dkt. 37.

[22]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[23]    *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[24]    *Iqbal*, 556 U.S. at 678-79.

[25]    *Cook v. Gates*, 528 F.3d 42, 48 (1st Cir. 2008).

1.    **Plaintiff fails to state a claim against Facebook under federal law.**

        a.    **Plaintiff does not state a claim against Facebook under 42 U.S.C. § 1983.**

Plaintiff alleges "eighth amendment violations" against Facebook, raised via Section 1983.[26]  But he cannot bring a Section 1983 claim against Facebook because it is a private actor. As the First Circuit has held, "[i]f there is no state action, then the court may not impose constitutional obligations on (and thus restrict the freedom of) private actors."[27]  Plaintiff acknowledges Facebook is a business.[28]  Facebook is a private actor.  District courts routinely dismiss Section 1983 claims brought against Facebook and other internet companies on this basis alone.[29]

Plaintiff may argue that he can nonetheless bring a Section 1983 claim because private parties jointly engaged with a state official act under color of law.[30]  This argument fails.  A plaintiff can bring a constitutional claim against a private actor only if the private actor "assumes a traditional public function when performing the challenged conduct; or if the challenged conduct is coerced or significantly encouraged by the state; or if the state has 'so far insinuated

---

[26]    FAC. ¶¶ 157-165.

[27]    *Yeo v. Town of Lexington*, 131 F. 3d 241, 248-49 (1st Cir. 1997); *see also Santiago v. Puerto Rico*, 655 F.3d 61, 68 (1st Cir. 2011).

[28]    FAC ¶ 5.

[29]    *See, e.g.*, *DeLima v. YouTube, LLC*, No. 17-CV-733-PB, 2018 WL 4473551, at *4 (D.N.H. Aug. 30, 2018) ("Defendants are all private companies. DeLima has failed to allege any state action giving rise to the alleged violations of her First Amendment rights []"), *report and recommendation adopted sub nom. DeLima v. YouTube Inc*, No. 17-CV-733-PB, 2018 WL 4471721 (D.N.H. Sept. 18, 2018), *aff'd sub nom. Delima v. YouTube, Inc.*, Nos. 18-1666, 18-1728, 18-1804, 18-1831, 18-1947, 18-2023, 2019 WL 1620756 (1st Cir. 2019), *cert. denied,* 140 S. Ct. 555 (2019); *Atkinson v. Facebook, Inc.*, 3:20-CV-05546-RS, slip op. at 4-5 (N.D. Cal. Dec. 7, 2020); *Fed. Agency of News LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295, 1303-04 (N.D. Cal. 2019) ("Facebook is not a state actor, and the First Amendment only applies to state actors[.]"); *Fehrenbach v. Zeldin*, No. 17-CV-5282 (JFB) (ARL), 2018 WL 4242452, at *3 (E.D.N.Y. Aug. 6, 2018) (dismissing constitutional claims against Facebook for failure to establish that Facebook is a state actor); *Nyabwa v. Facebook*, No. 2:17-CV-24, 2018 WL 585467, at *1 (S.D. Tex. Jan. 26, 2018) (same); *Shulman v. Facebook.com*, No. 17-764 (JMV), 2017 WL 5129885, at *4 (D.N.J. Nov. 6, 2017) (same); *Forbes v. Facebook, Inc.*, No. 16 CV 404 (AMD), 2016 WL 676396 at *2 (E.D.N.Y. Feb. 18, 2016) (declining to hold that Facebook's actions could be attributable to state); *Young v. Facebook, Inc.*, No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304, at *2 (N.D. Cal. Oct. 25, 2010) (dismissing section 1983 action against Facebook for failure to allege "action under color of state law").

[30]    TRO Br. at 14-16 (citing *Dennis v. Sparks*, 449 U.S. 24 (1980)).

---

1   itself into a position of interdependence with the private party that it was a joint participant in the

2   challenged activity.'"[31]   The final prong evaluates whether the private actor is "jointly engaged"

3   with state officials in the challenged conduct.[32]   Here, Plaintiff alleges no facts to support an

4   inference that Facebook has assumed a traditional public function, that the state coerced

5   Facebook's conduct, or that Facebook and the state are interdependent.[33]   In fact, Plaintiff does

6   not even allege that Facebook has a connection to any state official, much less that they are

7   jointly engaged.[34]   Courts have repeatedly held that Facebook is not jointly involved with state

8   actors such that it may be subject to constitutional claims.[35]   Because Plaintiff fails to allege that

9   Facebook's conduct amounts to state action, his Section 1983 claim against it must fail.[36]

10   **b.   Plaintiff does not state a claim against Facebook under 42 U.S.C. § 1986.**

11   Plaintiff alleges that Facebook, in violation of Section 1986, failed to prevent an alleged

12   conspiracy between Kearney and Google to interfere with this federal case.[37]   Plaintiff fails to

13   allege a claim against Facebook under this statute, which provides a cause of action against a

14   person who has knowledge of and power to prevent the conspiracies described in Section 1985

15   but neglects to do so.   The underlying conspiracy Plaintiff attempts to allege is a conspiracy to

16   interfere with a federal court proceeding, violating Section 1985(2).[38]   But Plaintiff does not

17   plausibly allege any underlying conspiracy, as he fails to allege that Kearney and Google entered

18

19   [31]   *Santiago*, 655 F.3d at 68-69 (internal brackets omitted) (quoting *Estades–Negroni v. CPC Hosp. San Juan Capestrano,* 412 F.3d 1, 5 (1st Cir. 2005)); *see generally Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).

20
21   [32]   *Alexis v. McDonald's Restaurants of Massachusetts, Inc.*, 67 F.3d 341, 351 (1st Cir. 1995) (quoting *Dennis*, 449 U.S. at 27-28).

22   [33]   *Santiago*, 655 F.3d at 68-69.

     [34]   FAC ¶¶ 157-165.

23
24   [35]   *See, e.g.*, *Fed. Agency of News*, 395 F. Supp. 3d at 1311-13; *Fehrenbach*, 2018 WL 4242452, at *3; *Young,* 2010 WL 4269304, at *3; *Atkinson v. Facebook, Inc.*, 3:20-CV-05546-RS, slip op. at 4-8 (N.D. Cal. Dec. 7, 2020).

25
26   [36]   *E.g.*, *Am. Honda Fin. Corp. v. City of Revere*, No. 1:19-CV-10266-ADB, 2020 WL 3840905, at *3 n.1 (D. Mass. July 8, 2020) (discussing *Nesbitt v. City of Methuen*, No. 17-CV-11255-DJC, 2018 WL 3130636, at *2 (D. Mass. June 26, 2018)); *see also King v. Friends of Kelly Ayotte*, 860 F. Supp. 2d 118, 124-25 (D.N.H. 2012).

27   [37]   FAC ¶ 110-117.

28   [38]   *Id.* ¶¶ 101-109.

into a conspiratorial agreement to interfere with this litigation.  Without alleging a conspiratorial agreement, Plaintiff cannot state a claim for an underlying conspiracy,[39] and the Section 1986 claim against Facebook must fail.[40]

Even if Plaintiff had plausibly alleged a conspiracy between Kearney and Google, he still does not state a claim against Facebook under Section 1986.  Plaintiff fails to allege that Facebook knew of any conspiracy it should have sought to prevent.  Rather, he asserts only that Facebook knew Kearney's profiles violated Facebook's Terms of Service and did not remove certain content.[41]  This cannot support a claim under Section 1986.  Moreover, Plaintiff does not allege that Facebook had power to prevent any supposed conspiracy between Kearney and Google.  Nor could he: Kearney's videos with the "obstructing material" are hosted on YouTube, a platform operated by Google.[42]

### c.   Plaintiff does not state a claim under 18 U.S.C. § 1962(d).

Plaintiff alleges that Facebook conspired to violate the Racketeer Influenced and Corrupt Organization Act ("RICO").[43]  This claim also fails.  To state a claim for conspiracy to violate RICO, a plaintiff must plausibly allege that a defendant "intend[s] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that [it] adopt the goal of furthering or facilitating the criminal endeavor."[44]  Put differently, a plaintiff must allege that the defendant "'knew about and agreed to facilitate' a substantive RICO violation."[45]  To allege a conspiracy to violate Section 1962(c)—the only substantive RICO

---

[39]   *O'Rourke v. Hampshire Council of Governments*, 121 F. Supp. 3d 264, 273 (D. Mass. 2015) (citing *Nieves v. McSweeney,* 241 F.3d 46, 53 (1st Cir. 2001)).

[40]   *Maymi v. Puerto Rico Ports Auth.*, 515 F.3d 20, 31 (1st Cir. 2008).

[41]   FAC ¶ 113.

[42]   *Id.* ¶¶ 6, 102-106.

[43]   *Id.* ¶¶ 136-142.

[44]   *U.S. v. Cianci*, 378 F.3d 71, 90 (1st Cir. 2004) (quoting *Salinas v. U.S.*, 522 U.S. 52, 65 (1997)).

[45]   *U.S. v. Leoner-Aguirre*, 939 F.3d 310, 316 (1st Cir. 2019) (quoting *Salinas*, 522 U.S. at 66); *U.S. v. Rodriguez-Torres*, 939 F.3d 16, 30 (1st Cir. 2019) (to establish the "knowingly joined" element of a RICO conspiracy requires "'that the defendant agreed with one or more coconspirators to participate in the conspiracy.'").

offense in the FAC—a plaintiff must allege "the defendant knew about and agreed to facilitate 'the conduct of [an] enterprise's affairs through a pattern of racketeering activity.'"[46]

Plaintiff fails to plausibly allege that Facebook knew about and agreed to facilitate any supposed pattern of racketeering by the alleged enterprise comprised of Aidan Kearney, Katherine Peter, Worcter Digital Marketing LLC, and Turtleboy Enterprises LLC.[47]  Plaintiff does not allege any facts establishing such knowledge.  Rather, the only allegations concerning Facebook's knowledge of substantive RICO violations are conclusory assertions devoid of any factual support:

- "The Count I Defendant(s) agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of obstructing justice and intentionally harming the Plaintiff's business and property."[48]

- "Google and Facebook . . . were legally made aware of the features and general aims of the scheme, and that by distribution they were participating in the racketeering activity, yet they continued to facilitate the scheme and actively participate by distributing the illegal content based on behavioral analysis for advertising profit."[49]

- "Facebook knew or should have known that Aidan Kearney was using dozens of fake profiles to harass people with, but nonetheless permitted them to harass me."[50]

But Plaintiff fails to allege how Facebook knew about any purported scheme to engage in a pattern of *racketeering activity*.[51]  He supplies no facts to explain how Facebook could know that Kearney's alleged harassment was intended to intimidate witnesses or retaliate against individuals reporting crimes to law enforcement.  Plaintiff provides no explanation as to how Facebook could have known about Kearney's alleged goal to intimidate witnesses—especially witnesses like co-defendant Katherine Peter, a member of the supposed enterprise.  Nor does he

---

[46]    *Leoner-Aguirre*, 939 F.3d at 316 (quoting 18 U.S.C. § 1962(c)).

[47]    FAC ¶¶ 119-121.

[48]    *Id.* ¶ 124.

[49]    *Id.* ¶ 137.

[50]    *Id.* ¶ 139.

[51]    *See Leoner-Aguirre*, 939 F.3d at 316.

1   explain how Facebook could have known that Kearney intended to use his personal blog to

2   retaliate against individuals for providing information to law enforcement.  The simple fact that

3   Kearney uses fake profiles to post offensive content—even if that content is reported as

4   offensive—does not support an inference that Facebook knew of Kearney's alleged pattern of

5   racketeering activity.[52]  It is implausible that Facebook would be able to divine whether each

6   reported post across its worldwide platform is part of some nefarious scheme.

7        Moreover, Plaintiff fails to plausibly allege that Facebook agreed to anything with the

8   alleged conspirators.  Plaintiff does not allege any connection between Facebook and Kearney

9   other than that Kearney is a Facebook user.  Nor does he allege that anyone at Facebook ever

10   communicated with Kearney, any member of the alleged enterprise, or alleged coconspirator

11   Google.  Thus, not only does Plaintiff fail to allege the express facts of any conspiratorial

12   agreement, he also fails to allege facts that "its existence can plausibly be inferred from the

13   defendants' words and actions and the interdependence of activities and persons involved."[53]

14        Additionally, Plaintiff also fails to allege that Facebook intended to facilitate Kearney's

15   wrongful conduct.  His conclusory assertion that Facebook "facilitate[d] the scheme and actively

16   participate[d] by distributing the illegal content based on behavioral analysis for advertising

17   profit"[54] is belied by the rest of the FAC.  Plaintiff alleges that Facebook uses an algorithm that

18   collects data about its users to match them with content they might find interesting.[55]  He claims

19   that this algorithm caused offensive content created by Kearney and others to appear in the news

20   feeds and notifications of his friends and family.[56]  But none of this suggests that Facebook

21   *intended* to facilitate any wrongdoing.  Further, Plaintiff explains that Facebook has previously

22   suspended at least three accounts associated with Kearney's blog "Turtleboy Sports."[57]  These

23   allegations contradict his conclusory assertion that Facebook somehow intended to facilitate the

---

24   [52]      See FAC ¶¶ 126-132.

25   [53]      *U.S. v. Boylan*, 898 F.2d 230, 241–42 (1st Cir. 1990).

26   [54]      FAC ¶ 137.

26   [55]      *Id.* ¶ 25.

27   [56]      *Id.* ¶¶ 75, 162.

28   [57]      *Id.* ¶ 20, 38.

1   alleged predicate offenses.[58] Accordingly, Plaintiff cannot allege that Facebook knew of, agreed

2   to, or intended to facilitate any racketeering activity.

### 2. The Court lacks subject-matter jurisdiction over Plaintiff's state-law claims—for which he also fails to state claim against Facebook.

In addition to his federal claims, Plaintiff also brings claims against Facebook for (1) product design flaw; (2) gross negligence; (3) violating the Massachusetts constitution; and (4) intentional infliction of emotional distress.  The Court lacks jurisdiction over these pendant claims, which are also insufficiently pled.

### a. The Court lacks subject-matter jurisdiction over Plaintiff's state-law claims against Facebook.

The Court lacks subject-matter jurisdiction over Plaintiff's pendant state-law claims against Facebook because his federal law claims fail.[59]  Moreover, Plaintiff does not invoke this Court's diversity jurisdiction.[60]  To invoke diversity jurisdiction, Plaintiff must, in objective good-faith,[61] allege that the amount in controversy exceeds $75,000.[62]  He bears "the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount."[63]  Plaintiff does not allege any amount in controversy, supported by particular facts or otherwise.  Accordingly, the Court cannot exercise diversity jurisdiction over the state-law claims.

---

[58]   *See, e.g., Crimson Galeria Limited Partnership v. Healthy Pharms, Inc.*, 337 F. Supp. 3d 20, 43 (D. Mass. 2018) ("Plaintiffs have not adequately shown that providing ordinary banking services to marijuana-related businesses, in compliance with Treasury Department guidance aimed at enabling banks to provide such services, sufficiently demonstrates that it joined and intended to further a RICO conspiracy."); *Reyes v. Zion First Nat'l Bank*, No. 10-cv-345, 2012 WL 947139, at *6 (E.D. Pa. Mar. 21, 2012) ("Where a defendant is alleged to have conspired with a RICO enterprise to violate § 1962(c) by providing it what would ordinarily be lawful professional services, liability will arise only from services which were purposefully and knowingly directed at facilitating a criminal pattern of racketeering activity." (internal quotations omitted)).

[59]   28 U.S.C. § 1367.

[60]   28 U.S.C. § 1332.

[61]   *Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 42-43 (1st Cir. 2012)

[62]   28 U.S.C. § 1332(a).

[63]   *Abdel-Aleem*, 665 F.3d at 42 (internal quotation marks and citation omitted); *see also Dep't of Rec. & Sports of Puerto Rico v. World Boxing Assn*, 942 F.2d 84, 90 (1st Cir. 1991) (ordering dismissal of complaint for failure to make "specific factual allegations to support the amount in controversy requirement").

### b. Plaintiff does not state a claim against Facebook for gross negligence.

Even if the court has subject-matter jurisdiction over these state law claims, they, too, are facially deficient.  Plaintiff alleges Facebook was grossly negligent, resulting in his physical pain, mental anguish, and diminished enjoyment of life.[64]  "Gross negligence" is a negligence cause of action with a higher level of culpability.[65]  To state a claim for negligence, a plaintiff must allege "that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage."[66]  Gross negligence is "substantially and appreciably higher in magnitude than ordinary negligence."[67]  It is characterized by "the want of even scant care."[68]  Plaintiff fails to sufficiently allege (1) that Facebook owes him a duty of care; (2) that Facebook breached that duty of care; or (3) that his injuries were proximately caused by any supposed breach.

Plaintiff alleges no facts to establish duty.  Instead, he incudes a conclusory allegation that Facebook owes him a duty of care under "*sic utere tuo ut alienum non laedas*,"[69] which translates to "use your own property in such a manner as not to injure that of another."[70]  The *sic utere* doctrine establishes "limitations on the scope and extent of the right of ownership in immovable (real) property[,]"[71] and this case does not concern Facebook's use of its real property.  Plaintiff does not allege that Facebook has a duty to prevent harmful conduct from third parties.  Under Massachusetts law, "[a]bsent a special relationship with a person posing a risk, there is no duty to

---

[64]     FAC ¶¶ 94-100.

[65]     *Weinberg v. Grand Circle Travel, LCC*, 891 F. Supp. 2d 228, 251 (D. Mass. 2012) (citing *Matsuyama v. Birnbaum*, 452 Mass. 1, 36 (2008)).

[66]     *Jupin v. Kask*, 447 Mass. 141, 146 (2006); *see also Doe v. Amherst College*, 238 F. Supp. 3d 195, 227–28 (D. Mass. 2017) (citing *Saldivar v. Racine*, 818 F.3d 14, 20–21 (1st Cir. 2016)).

[67]     *Altman v. Aronson*, 231 Mass. 588, 591–92 (1919).

[68]     *Lumbermens Mut. Cas. Co. v. Grinnell Corp.*, 477 F. Supp. 2d 327, 334 (D. Mass. 2007) (quoting *Altman*, 231 Mass. at 591–92.)

[69]     FAC ¶ 100.

[70]     *See, e.g., Ictech-Bendeck v. Progressive Waste Sols. of LA, Inc.*, 367 F. Supp. 3d 555, 566 (E.D. La. 2019).

[71]     *Perkins v. F.I.E. Corp.*, 762 F.2d 1250, 1255 (5th Cir. 1985).

11

control another person's conduct to prevent that person from causing harm to a third party[.]"[72] For example, a defendant may owe a duty of reasonable care when she has a parent-child, master-servant, or possessor-licensee relationship with the person who injures a plaintiff, or otherwise "takes charge" of a person she knows is likely to cause harm if not controlled.[73]  Plaintiff seeks to hold Facebook liable for the harassment by other users, but fails to allege the existence of any special relationship.  He therefore fails to allege that Facebook owed him a duty.

Plaintiff also does not plausibly allege that Facebook breached that duty to satisfy even the ordinary negligence standard.  In fact, he does not allege how Facebook's conduct fell below a reasonable standard of care.[74]  Instead, Plaintiff acknowledges that Facebook suspended numerous accounts associated with Kearney.[75]  Plaintiff also fails to even acknowledge the heightened culpability standard required for gross negligence claims, much less plead facts sufficient to meet this heightened standard.  He alleges only that his injuries would have been avoided if Facebook had taken "reasonable care[.]"[76]  Plaintiff therefore fails to allege, even in a conclusory fashion, the defining element of his gross negligence claim.  And Facebook's repeated suspension of Kearney's accounts precludes an inference of a lack of "even scant care."[77]

These facts further undermine Plaintiff's conclusory assertion that Facebook conduct was the proximate cause of his unspecified injuries.[78]  Kearney created the offensive content, and Kearney posted it on various online forums: his blog, Facebook, and YouTube.[79]  Plaintiff also acknowledges that Facebook has reviewed and suspended many pages associated with Kearney.[80]

---

[72]     *Leavitt v. Brockton Hosp., Inc.*, 454 Mass. 37, 40–41 (2009).

[73]     *O'Neill v. U.S.*, 328 F. Supp. 3d 16, 23-24 (D. Mass. 2018), *aff'd sub nom. Romano v. U.S.*, 774 Fed. Appx. 7 (1st Cir. 2019) (unpublished) (citing *McCloskey v. Mueller*, 446 F.3d 262, 268 (1st Cir. 2006)).

[74]     *See* FAC ¶¶ 94–100.

[75]     *Id.* ¶¶ 20, 38.

[76]     *Id.* ¶ 97.

[77]     *Altman*, 231 Mass. at 591–92.

[78]     FAC ¶ 99.

[79]     *Id.* ¶¶ 17-18, 22-23, 31.

[80]     *Id.* ¶¶ 20, 38.

1    He further explains that even without a Facebook presence, "Kearney will still be able to

2    communicate his views using his websites and traditional media[.]"[81]  Thus, Plaintiff fails to state

3    a claim for gross negligence.

4               c.      **Plaintiff does not state a claim against Facebook for "product
                        design flaw."**

5

6        Plaintiff alleges a claim against Facebook for "product design flaw."[82]  This claim fails to

7    satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a)(2), which requires "a

8    short and plain statement of the claim showing that the pleader is entitled to relief."  This requires

9    that a plaintiff provide "sufficient detail . . . to give a defendant fair notice of the claim and the

10   grounds upon which it rests."[83]  But Plaintiff does not identify the legal basis for his "product

11   design flaw" claim—which does not exist in Massachusetts statutory or common law.  This alone

12   is sufficient basis to dismiss the claim as currently plead.[84]

13       To the extent Plaintiff is seeking to assert some sort of products liability claim, the theory

14   is unclear.  He asserts Facebook's platform is defectively designed and unreasonably dangerous

15   because it does not ensure that all instances of what he believes to be witness intimidation are

16   reported and prevented.[85]  It appears that he attributes this to an alleged failure verify each user's

17   actual identity and does not undertake to determine the true identity of a user who commits a

18   crime.[86]  He asserts that Facebook could moderate its platform with a safer alternative moderation

19   design.[87]  Plaintiff appears to be conflating various products liability claims, potentially negligent

20   design and implied warranty liability.[88]  His muddled allegations miss the mark on both.

---

21   [81]      TRO Br. at 17.

22   [82]      FAC ¶¶ 79-93.

23   [83]      *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 8 (1st Cir. 2011).

24   [84]      *See, e.g., Castillo v. SEIU 32BJ New Eng.,* No. 20-11220-ADB, 2020 WL 5237698, at *2
             (D. Mass. Sept. 2, 2020).

25   [85]      FAC ¶ 84.

26   [86]      *Id.* ¶ 85.

27   [87]      *Id.* ¶ 90.

28   [88]      *Geshke v. Crocs, Inc.*, 889 F. Supp. 2d 253, 261, 64 (D. Mass. 2012), *aff'd*, 740 F.3d 74
             (1st Cir. 2014) (using "safer alternative design" to discuss negligent design and "unreasonably
             dangerous product" to discuss breach of implied warranty)).

First, warranty liability for defective design cannot be premised on Facebook's conduct.[89] But that's exactly what Plaintiff does here. His allegations focus on Facebook's conduct, what it supposedly knew, and how it allegedly failed to reasonably moderate user disputes.[90] Second, to state a claim for negligent design, a plaintiff must allege (1) failure to exercise a reasonable degree of care under the circumstances; (2) proximate causation; and (3) injury.[91] Negligent design claims broadly consider whether a defendant has "'failed to use reasonable care to eliminate foreseeable dangers which subject a user to an unreasonable risk of injury.'"[92] But Plaintiff does not even allege what the negligent moderation practices—to the extent they even constitute "design" features—were or how they breach the standard of care. Instead, he proposes a "[s]afer alternative" moderation practice he prefers,[93] failing to allege the necessary element of failure to use reasonable care.[94] He does not, and his allegations suggest Facebook's moderation practices are reasonable. Its moderation practices have resulted in Facebook suspending at least three pages associated with Kearney for the content of posts written about Plaintiff.[95] Finally, Plaintiff fails to allege any facts to support his single, conclusory allegation of cause.[96] Thus, Plaintiff's "product design flaw" claim fails.

### d.   Plaintiff does not state a claim against Facebook under Massachusetts General Law Chapter 12 § 11I.

Plaintiff alleges that Facebook violated his rights under Article XII of the Massachusetts Constitution, which concerns criminal prosecutions, and brings a claim via Massachusetts

---

[89]    *See Haglund v. Philip Morris, Inc.*, 446 Mass. 741, 747 n.9 (2006) (citing *Colter v. Barber-Greene Co.*, 403 Mass. 50, 61–62 (1988)).

[90]    FAC ¶¶ 80, 82-85.

[91]    *Taupier v. Davol, Inc.*, 3:19-CV-10184-KAR, 2020 WL 5665565, *9 (D. Mass. Sept. 23, 2020) (citing *Geshke,* 889 F. Supp. 2d at 261).

[92]    *Haglund*, 446 Mass. at 747 n.9 (quoting *Colter*, 403 Mass. at 61).

[93]    FAC ¶ 89.

[94]    *See Osorio v. One World Techs., Inc.*, 659 F.3d 81, 86–87 (1st Cir. 2011) (a plaintiff may prevail in a design defect in the absence establishing a feasible alternative design)).

[95]    FAC ¶¶ 20, 38.

[96]    *Id.* ¶ 92.

14

1  General Law chapter 12, section 11I.[97]  To state a claim under Section 11I, a plaintiff must allege

2  that a defendant interfered with a secured right by "threats, intimidation or coercion[.]"[98]

3  Plaintiff does not allege any facts to support an inference that Facebook threatened, coerced, or

4  intimidated him.  Nor does he allege that Facebook "engaged in a joint venture with the goal of

5  interfering with" his rights such that any threats or intimidation can be imputed to it.[99]  Plaintiff's

6  Section 11I claim fails.

7                       **e.**     **Plaintiff does not state a claim against Facebook for intentional infliction of emotional distress.**

8

9         Plaintiff also fails to state claim against Facebook for intentional infliction of emotional

10  distress.[100]  To state a claim for intentional infliction of emotional distress, a plaintiff must allege

11  "(1) that [defendant] intended, knew, or should have known that his conduct would cause

12  emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused

13  emotional distress; and (4) that the emotional distress was severe."[101]  Plaintiff does not allege

14  any facts relating to Facebook to support these required elements.  He does not allege that

15  Facebook knew—or even should have known—that an algorithm would cause him harm.  Nor

16  does he allege explain how any conduct by Facebook is "so outrageous in character, and so

17  extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

18  atrocious, and utterly intolerable in a civilized community."[102]  Accordingly, Plaintiff does not

19  state a claim for intentional infliction of emotional distress.

20  **B.**     **Plaintiff's claims are barred by Section 230(c)(1) of the Communications Decency Act.**

21         Even if Plaintiff had stated a claim under any of his causes of action, his claims are barred

22  under federal law.  Section 230(c)(1) of the CDA bars Plaintiff's claims because they seek to hold

23  ───────────────

24  [97]   *Id.* ¶¶ 153-156.

[98]   Mass. Gen. Laws Ch. 12, §§ 11H, 11I; *see also Bell v. Mazza*, 394 Mass. 176, 182 (1985).

25  [99]   *Bell*, 394 Mass. at 184.

26  [100]   FAC ¶¶ 166-169.

[101]   *Polay v. McMahon*, 468 Mass. 379, 385 (2014).

27  [102]   *Foley v. Polaroid Corp.*, 400 Mass 82, 99 (1987) (quoting Restatement (Second) of Torts

28  § 46 comment d (1965)).

Facebook liable for the content created by Facebook's users.[103]  CDA immunity is not only a

defense to liability, but immunity from suit.[104]  Accordingly, immunity should be determined "at

the earliest possible stage[.]"[105]  Plaintiff cannot circumvent this broad immunity under the CDA

by artful pleading that attempts to frame his claims in terms of Facebook's actions.[106]

Under Section 230(c)(1) of the CDA, "[n]o provider or user of an interactive computer

service shall be treated as the publisher or speaker of any information provided by another

information content provider."[107]  Immunity is construed broadly, recognizing "the 'obvious

chilling effect' that such intermediary tort liability could have, given the volume of material

communicated through such intermediaries[.]"[108]  "[S]o long as a third party willingly provides

the essential published content, the interactive service provider receives full immunity regardless

of the specific editing or selection process."[109]

Courts have thus routinely and consistently dismissed at the pleading stage claims such as

Plaintiff's, which seek to hold Facebook or other online platform operators liable for allegedly

offensive or hurtful content posted by another user.[110]

Here, Facebook is entitled to immunity under Section 230(c)(1) because, from the face of

the pleadings, it satisfies each of the three requirements for such immunity: (1) it is a provider of

---

[103]   *See, e.g.,* FAC ¶¶ 15-26, 38, 75, 80, 84-85, 111, 113, 128, 137, 162.

[104]   *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009).

[105]   *Id.* at 255.

[106]   *See Universal Commun. Sys., Inc. v. Lycos, Inc.,* 478 F.3d 413, 418 (1st Cir. 2007)

[107]   47 U.S.C. § 230(c)(1).

[108]   *Lycos,* 478 F.3d at 418–19 (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997); *see also Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 19 (1st Cir. 2016).

[109]   *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003).

[110]   *See, e.g.*, *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011) (motion to dismiss); *Federal Agency of News LLC,* 395 F. Supp 3d at 1303-04 (same); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064-66 (N.D. Cal. 2016) (same); *Lancaster v. Alphabet Inc.*, Case No. 15-cv-05299-HSG, 2016 WL 3648608, at * 2-3 (N.D. Cal. July 8, 2016) (same); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095-1096 (N.D. Cal. 2015), *affirmed sub nom, Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017) (same); *Obado v. Magedson*, No. 13-2382 (JAP), 2014 WL 3778261, at *7-9 (D.N.J. July 31, 2014), *aff'd*, 612 F. App'x 90 (3d Cir. 2015) (same); *Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1122–23 (E.D. Cal. 2010) (same); *Doe II v. MySpace, Inc.*, 175 Cal. App. 4th 561, 565-568 (2009) (demurrer); *Cross v. Facebook,* 14 Cal. App. 5th 190, 213 (2017) (anti-SLAPP).

an "interactive computer service;" (2) the content at issue was "provided by another information content provider;" and (3) the claims treat Facebook as the "publisher" or "speaker" of that content.[111]

### a.   Facebook is an interactive computer service provider.

Facebook satisfies the first requirement for Section 230(c)(1) immunity because it is a provider of interactive computer services.  The CDA broadly defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]"[112]  Courts consistently conclude that Facebook meets this statutory definition.[113]

### b.   Facebook did not provide the content at issue.

Facebook satisfies the second requirement for Section 230(c)(1) immunity because the content at issue here comes not from Facebook but from Facebook users—specifically, Kearney. Courts routinely hold that Facebook users are "[]other information content provider[s]" under the statute.[114]  Here, Plaintiff alleges that Kearney and his followers created all of the posts at issue.[115]  He does not allege that anyone at Facebook authored any of these posts.  This satisfies the second requirement.

Plaintiff may attempt to circumvent Section 230(c)(1) by arguing Kearney's content was "developed in part" by Facebook because some unidentified algorithm resulted in Kearney's content appearing in the notifications and news feeds of his friends and family.[116]  That argument fails.  Courts have repeatedly rejected the argument that an online platform operator somehow "creates" a user's content for purposes of Section 230(c)(1) by choosing how or to whom that

---

[111]   47 U.S.C. § 230(c)(1).

[112]   *Id.* § 230(f)(2).

[113]   *See, e.g., Klayman v. Zuckerberg*, 753 F.3d 1354, 1357-58 (D.C. Cir. 2014); *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 155-56 (E.D.N.Y. 2017); *Sikhs for Justice*, 144 F. Supp. 3d at 1093.

[114]   *Klayman*, 753 F.3d at 1358-59 (information published by users of Facebook was "information provided by another information content provider" within Section 230(c)(1)); *King v. Facebook, Inc.*, No. 19-CV-01987-WHO, 2019 WL 4221768, at *4 (N.D. Cal. Sept. 5, 2019)

[115]   *See, e.g.,* FAC ¶¶ 14, 34-35, 55, 161.

[116]   *Id.* ¶ 162.

17

content is displayed.[117]  For example, in *Force v. Facebook, Inc.*, the Second Circuit expressly rejected the idea that Facebook's engagement algorithm transforms Facebook from a platform operator into a co-developer of its users' content.[118]  The court explained that a defendant does not "develop[]" third-party content unless it "directly and 'materially' contributed to what made the content itself 'unlawful.'"[119]  Functions like recommendations and notifications simply facilitate "user-to-user communication"; they do not "develop[]" content.[120]

### c.   Plaintiff seeks to hold Facebook liable for exercising "a publisher's traditional editorial functions."

Finally, Facebook satisfies the third requirement for Section 230(c)(1) immunity because Plaintiff seeks to hold Facebook liable as a publisher of Kearney's content.  Plaintiff's theory of liability against Facebook "must be premised on imputing to it the alleged [offensive content], that is, on treating [Facebook] as the publisher of that information."[121]  He seeks to hold Facebook accountable for third-party videos and posts that "were published" on Kearney's Facebook page.[122]  Failure to remove user-generated content satisfies this third prong.[123]

Facebook cannot be liable for not removing Kearney's allegedly unlawful content.[124]  It is

---

[117]   *Force v. Facebook,* 934 F.3d 53, 67 (2nd Cir. 2019); *Dyroff v. Ultimate Software Grp.,* 934 F.3d 1093, 1098 (9th Cir. 2019) (recommendations and notifications facilitate communication, but "[t]hey are not content in and of themselves"); *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1271 (D.C. Cir. 2019); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1118-19 (N.D. Cal. 2020); *Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 890 (N.D. Cal. 2017) (rejecting argument that defendants, including Facebook, were liable as creators of content because they allegedly "select advertisements to pair with content on their services"); *Jurin*, 695 F. Supp. 2d at 1123.

[118]   934 F.3d at 68-72 (Facebook's use of an objective algorithm did not "develop," in whole or in part, postings by its user).

[119]   *Id.* at 68 (quoting *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2nd Cir. 2016)).

[120]   *Dyroff*, 934 F.3d at 1099; *see also Force*, 934 F.3d at 69-70; *Jurin*, 695 F. Supp. 2d at 1123; *Pennie*, 281 F. Supp. 3d at 890.

[121]   *Lycos,* 478 F.3d at 422.

[122]   FAC ¶ 44; *see also id.* ¶ 23, 34, 43, 54, 161.

[123]   *E.g.*, *Jane Doe*, 817 F.3d at 18 ("lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred") (citation omitted); *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009) ("removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove").

[124]   *See, e.g.,* FAC ¶¶ 26, 128.

18

1   "well established that notice of the unlawful nature of the information provided is not enough to

2   make it the service provider's own speech. . . Section 230 immunity applies even after notice of

3   the potentially unlawful nature of the third-party content."[125]

4         Plaintiff may try to avoid this straightforward application of the third requirement by

5   arguing, as he did in his TRO Brief, that he does not treat Facebook as a publisher because some

6   unidentified Facebook algorithm resulted in his friends and family seeing Kearney's content in

7   their news feeds or notifications.[126]  But, as the First Circuit has held, so long as "the cause of

8   action is one that would treat the service provider as the publisher of a particular posting,

9   immunity applies not only for the service provider's decisions with respect to that posting, but

10  also for its inherent decisions about how to treat postings generally."[127]  Features "which reflect

11  choices about what content can appear on the website and in what form, are editorial choices that

12  fall within the purview of traditional publisher functions."[128]  Moreover, to find that "[an]

13  interactive computer service would be ineligible for Section 230(c)(1) immunity by virtue of

14  simply organizing and displaying content exclusively provided by third parties"—an "essential

15  result of publishing"—would "eviscerate Section 230(c)(1)[.]"[129, 130]

16        Because all three requirements for Section 230(c)(1) immunity are met, Plaintiff cannot

17  bring any of his claims against Facebook.

18

19  [125]     *Lycos*, 478 F.3d at 420 (citations omitted).

20  [126]     *See* TRO Br. at 8; *see also* FAC ¶ 162.

21  [127]     *Lycos*, 478 F.3d at 422.

    [128]     *Jane Doe*, 817 F.3d at 21; *see also Barnes,* 570 F.3d at 1103 ("removing content is
22  something publishers do, and to impose liability on the basis of such conduct necessarily involves
    treating the liable party as a publisher of the content it failed to remove").

23  [129]     *Force*, 934 F.3d at 66.

24  [130]     Plaintiff may seek to evade this settled precedent by relying on Justice Thomas's
    statement regarding the denial of certiorari in *Malwarebytes, Inc. v. Enigma Software Group*
25  *USA, LLC*, No. 19-1284, 2020 WL 6037214 (U.S. Oct. 13, 2020).  That reliance would be
    misplaced.  This statement is not Supreme Court precedent and does not change widely settled
26  law prohibiting claims like the ones Plaintiff brings here.  Moreover, the underlying Ninth Circuit
    opinion interpreted Section 230(c)(2), whereas this case concerns Section 230(c)(1).  *See Enigma*
27  *Software Group USA, LLC v. Malwarebytes, Inc.,* 946 F.3d 1040 (9th Cir. 2019), *cert.*
    *denied,* No. 19-1284, 2020 WL 6037214 (U.S. Oct. 13, 2020).  Nor did that case involve claims
28  rooted in a service provider's failure to remove allegedly unlawful content.  *Id.*

**C.      Granting leave to amend would be futile.**

The Court need not grant Plaintiff leave to amend his FAC if it would be futile.[131]  And it would be futile here.  Plaintiff has demonstrated he cannot state any claim against Facebook. Facebook raised many of the arguments above in its TRO Opposition and again in its MTD Brief. But the FAC does not even attempt to fix the deficiencies in his original complaint.  He adds no new factual allegations.  He still relies on a terms of service violation to support his claim under 42 U.S.C. § 1986.[132]  He still fails to allege that Facebook knowingly joined any conspiracy— although this time he tries to allege a RICO conspiracy.[133]  He left unchanged his claims for civil rights violations under 42 U.S.C. § 1983 and Massachusetts General Law Chapter 12, section 11I, as well as his claim for intentional infliction of emotional distress.  Plaintiff added claims for "product design flaw" and gross negligence, but those, too, fail.  If Plaintiff could allege actionable facts against Facebook, he would have done so already.  Furthermore, he simply cannot overcome Facebook's CDA immunity.  Further amendment cannot solve these problems, and the Court should dismiss the FAC against Facebook without leave to amend.

**IV.      CONCLUSION**

For the foregoing reasons, Facebook respectfully requests that the Court dismiss Plaintiff's claims against it, without leave to amend and with prejudice.

Dated:  January 25, 2021

KEKER, VAN NEST & PETERS LLP

By:      */s/ Joseph Aronson*

| | |
|---|---|
| KEKER VAN NEST & PETERS, LLP<br>MATAN SHACHAM - Cal Bar # 262348<br>(admitted pro hac vice)<br>ERICA S. MIRANDA - Cal Bar # 325188<br>(admitted pro hac vice)<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:     415 391 5400<br>Facsimile:      415 397 7188 | KIERNAN, TREBACH LLP<br>JOSEPH ARONSON (BBO#022070)<br>jaronson@kiernantrebach.com<br>40 Court Street, 3rd Floor<br>Boston, MA 02108<br>Telephone: 617 426 3900<br>Facsimile: 617 426 0380<br><br>Attorneys for Defendant FACEBOOK, INC. |

---

[131]      *Flores-Silva v. McClintock-Hernandez*, 710 F.3d 1, 4 (1st Cir. 2013).

[132]      FAC ¶ 113.

[133]      *Id.* ¶¶ 136-142.